# NO. 12-18-00131-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF F.R.G.* | *§* | *APPEAL FROM THE* |
| | *§* | *COUNTY COURT AT LAW* |
| *AND N.A G., CHILDREN* | *§* | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

C.G. appeals the termination of her parental rights. In six issues, she challenges the trial court's termination order. We affirm.

## BACKGROUND

F.G. and C.G. are the parents of F.R.G. and N.A.G. On April 26, 2017, the Department of Family and Protective Services (the Department) filed an original petition for protection of the children, for conservatorship, and for termination of F.G.'s and C.G.'s parental rights. The Department was appointed temporary managing conservator of the children, and the parents were allowed limited access to, and possession of, the children.

At the conclusion of a trial on the merits, the jury found, by clear and convincing evidence, that C.G. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between C.G. and the children was in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between C.G. and the children be terminated. This appeal followed.[1]

---

[1] F.G.'s appeal of the termination of his parental rights has been delivered by this Court in a separate opinion.

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2016); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2018); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2018); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM CODE ANN. § 101.007 (West 2014). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm

belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27–29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

### TERMINATION UNDER SECTION 161.001(B)(1)

In her third and fourth issues, C.G. argues the evidence is legally and factually insufficient to terminate her parental rights pursuant to Texas Family Code Section 161.001(b)(1)(D), (E), and (O).

**Applicable Law**

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (West Supp. 2018). Subsection (D) addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775-76 (Tex. App.—Texarkana 2003, no pet). The child's "environment" refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993,

no pet.). Further, subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

When seeking termination under subsection (D), the Department must show that the child's living conditions pose a real threat of injury or harm. *In re N.R.*, 101 S.W.3d at 776; *Ybarra*, 869 S.W.2d at 577. Further, there must be a connection between the conditions and the resulting danger to the child's emotional or physical well-being. *Ybarra*, 869 S.W.2d at 577-78. It is sufficient that the parent was aware of the potential for danger to the child in such environment and disregarded the risk. *In re N.R.*, 101, S.W.3d at 776. In other words, conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). We have previously concluded it is illogical to reason that inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, is not inherently part of the "conditions and surroundings" of that place or home. *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Subsection (D) is designed to protect a child from precisely such an environment. *Id.*

The court may also order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West Supp. 2018). Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Finally, the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *In re N.K.*, 99 S.W.3d 295, 301 n.9 (Tex. App.—Texarkana 2003, no pet.); *In re M.D.S.*, 1 S.W.3d at 200.

Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). Termination under subsection (E) must be based on more than a single act or omission. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent

that endangers the child's physical and emotional well-being is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634.

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Endangering conduct is not limited to actions directed towards the child. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). It necessarily follows that the endangering conduct may include the parent's actions before the child's birth and while the parent had custody of older children. *See id.* (stating that although "endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury); *see also In re M.N.G.*, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (holding that courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). Further, the conduct may occur both before and after the child has been removed by the Department. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

"Endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533; *In re D.M.*, 58 S.W.3d at 811. It is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Boyd*, 727 S.W.2d at 533; *In re J.J.*, 911 S.W.2d at 440. Domestic violence may be considered evidence of endangerment. *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child. *See, e.g.*, *In re C.R.*, 263 S.W.3d 368, 371 (Tex. App.—Dallas 2008, no pet.); *In re M.R.*, 243 S.W.3d 807, 818–19 (Tex. App.—Fort Worth 2007, no pet.); *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

**Analysis**

The evidence at trial showed that C.G. and F.G. have a history with the Department. Investigator Michael Roberts testified that he received a report in April 2014 alleging that F.G. was arrested for driving while intoxicated with F.R.G. in the vehicle. F.G. admitted that he had

been drinking prior to being stopped by police. Two weeks later, F.G. was arrested for a second driving while intoxicated offense. Roberts interviewed F.R.G., who was six years old at the time. F.R.G. reported that his parents would drink and drive with him in the vehicle and that there were times when C.G. was "too drunk to drive." In July 2014, it was alleged that F.G. assaulted C.G. in F.R.G.'s presence. F.G. admitted that he and C.G. have "pretty rough" arguments around the children and that there was fighting in the home. There were also allegations that C.G. used Xanax and methamphetamine, so Roberts requested she submit to a drug test. C.G. refused and then failed to report to the drug assessment Roberts scheduled. F.R.G. was subsequently placed with F.G.'s sister.[2] C.G. submitted to a drug test the following day, which was returned as negative. The safety plan was lifted, the family was provided with Family Based Safety Services, and the case was closed.

In January 2017, C.G. was detained when a search warrant was executed on the home of Joshua Heard. Captain Regina Battley of the Cherokee County Sheriff's Department testified that she had been to Heard's residence on a previous narcotics warrant. On this occasion, Heard was not at his residence when the warrant was executed, but C.G. was present. She was detained but no charges were filed against her. Approximately two weeks later, a felony arrest warrant was issued for Heard. Deputy Alma Creel testified that Heard has a reputation as a drug user and dealer. On the day he was arrested, Heard asked to speak with C.G., who he identified as his girlfriend. Creel frisked C.G. and found a "baggie" of marijuana under her bra. Creel testified that C.G. "appeared very high on a substance" and was arrested. As soon as C.G. was handcuffed, she squatted and started yelling, "Get it out of me." Creel opined that C.G. probably had "dope inside her cavity areas."

In April 2017, Roberts received three intakes within a 36-hour period on the family. The intakes alleged that C.G. was drinking heavily and using methamphetamine, C.G. "is crazy and consistently [] involved [] physical altercations" with F.G. in the children's presence, C.G. has been involved in domestic violence with the maternal grandmother, and C.G. calls F.R.G. names and tells him that he "should've never been born." During the investigation, Roberts learned that F.G. and C.G. "split up" approximately six months prior.

C.G. contacted F.G.'s sister and asked her to keep F.R.G. and N.A.G. because "CPS was called again." Roberts stated that the Department had no concerns about the children staying with

---

[2] F.R.G. was an only child at the time of this incident.

F.G.'s sister. When Roberts spoke with F.R.G., he again told Roberts that his parents would drink and drive. He further told Roberts that his parents would fight and the last fight occurred right before he went to his aunt's house. F.R.G. also said that his uncle punched his mother in the face.

During Roberts's meeting with C.G., she admitted being arrested for possession of marijuana in January, getting into an altercation with the maternal grandmother, getting punched in the face by her brother, and using drugs that morning. C.G. admitted that she would test positive for methamphetamines when asked to submit to a drug test. C.G. stated that she was going to enter into a twenty-day drug treatment program but did not. She also told Roberts that she did not have a drug problem and could stop using drugs on her own.

C.G.'s friend, Kristina Collins, testified that C.G.'s drinking "got out of hand" when F.G. went to prison and she was left alone with the children. She further testified that C.G. was depressed and "would pretty much drink until she fell asleep." According to Collins, she witnessed domestic violence in which C.G. was the aggressor. C.G. also took out her frustrations on F.R.G. Collins has heard C.G. call F.R.G. a "little MF'er" and tell him that "if he wasn't born this stuff wouldn't happen." Collins further testified that C.G. cheated on her drug tests through a series of attempts to bleach and re-dye her hair within a certain timeframe. According to Collins, C.G. would claim to have ended her relationship with Heard; however, C.G. would then ask Collins to pick her up because Heard "beat the crap out of her."

The evidence further showed that C.G. failed to comply with her service plan. She failed to submit to drug testing on several occasions. In addition, she refused to enter a treatment or rehabilitation plan, even when asked by her friends.

The evidence also demonstrated that C.G. lacked stable housing. She was evicted from her apartment as a result of several complaints against her and her boyfriend. In addition, she admitted to "selling a little weed" in her apartment. C.G. lived in a trailer home with Heard for a couple of weeks, however, Katie Davis, the Department's conservatorship specialist, did not know C.G.'s current housing situation at the time of trial. Furthermore, Davis testified that C.G. failed to maintain employment and lied about her employment situation repeatedly.

From this evidence, a reasonable fact finder could have determined that C.G. has a history of alcohol and drug abuse, engaged in domestic violence in the presence of the children, failed to protect her children from her substance abuse and the domestic violence, has a substantial history with the Department, and emotionally abused F.R.G. *See* TEX. FAM. CODE ANN.

§ 161.001(b)(1)(D), (E). The evidence also suggests that C.G. failed to understand how her substance abuse and chaotic home life affected the children. Further, the fact finder could have formed a firm belief or conviction that C.G. was unable to adequately care for the children because she had inadequate and inappropriate housing and was unable to establish a safe and stable environment. *See id.*

Therefore, we hold that the evidence, viewed in the light most favorable to the jury's findings, was sufficiently clear and convincing that a reasonable trier of fact could have formed a firm belief or conviction that C.G. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, and engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. *See In re J.F.C.*, 96 S.W.3d at 266; *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Because the evidence is legally and factually sufficient to support termination of C.G.'s parental rights under subsections (D) and (E) of Texas Family Code Section 161.001(b)(1), we overrule C.G.'s third and fourth issues.[3]

## BEST INTEREST OF THE CHILDREN

In her fifth and sixth issues, C.G. challenges the legal and factual sufficiency of the evidence to support a finding that termination of her parental rights is in the children's best interest. In determining the best interest of the child, we consider a number of factors, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The family code also provides a list of factors that we consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2018).

---

[3] Because the evidence is sufficient to support termination under subsections (D) and (E), we need not address the sufficiency of the evidence to support subsection (O). *See* TEX. R. APP. P. 47.1; *see also In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.–Fort Worth 2007, no pet.) ("Along with a best interest finding, a finding of only one ground alleged under section 161.001(1) is sufficient to support a judgment of termination").

Those statutory factors include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (4) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (5) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (6) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (7) whether the child's family demonstrates adequate parenting skills; and (8) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id*. § 263.307(b)(1), (3), (6), (8), (10), (11), (12), (13).

The evidence need not prove all statutory or *Holley* factors in order to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.–Houston [14th Dist.] 2003, no pet.). In other words, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d at 814. Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re M.R.J.M.*, 280 S.W.3d at 507. But the presence of scant evidence relevant to each factor will not support such a finding. *Id*. Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28–29. We apply the statutory and *Holley* factors below.

**Analysis**

The evidence discussed above shows that C.G. has a history of drug abuse, failing to submit to requested drug testing, associating with criminals, and failing to maintain stable housing and employment. She also has a history of emotionally abusing F.R.G. and engaging in domestic violence and has her own criminal and Department history.

There was evidence that C.G. loves her children, the children love her, and that they were happy to see her during visitations. However, the evidence showed that F.R.G. has not mentioned either of his parents in several months. Furthermore, F.R.G. has commented to Davis that he is "okay" with C.G.'s rights being terminated "because she's always put [Heard] before him."

9

Davis testified that C.G. had not made any progress while the case was pending. She further stated that the "only thing I've seen is someone that has blamed everybody but herself and not accepted any responsibility in this." Davis testified that C.G. participated in the assessments; however, she did not follow any of the recommendations from those assessments or demonstrate change. She also opined that F.R.G. and N.A.G. were exposed to a "toxic environment" when living with their parents.

The evidence further showed that, due to C.G.'s interference, F.R.G. and N.A.G. have been in four foster homes since the case began. Davis testified that changing foster homes multiple times is an unnecessary amount of placement changes for children and that the first three placement changes were due to "parent behaviors." While the children were staying with Collins, Collins stated that C.G. and Heard would drive by her house. Heard would stare as he drove past the house. And C.G. would take pictures of F.R.G. from the neighbor's house. Collins testified that seeing his mother with Heard upset F.R.G. because "he knows that as long as [Heard] is around his momma's not going to get better." While the children were living with C.G.'s mother, C.G. and Heard were seen driving around town with the children in violation of the visitation agreement. Davis opined that it is best for F.R.G. and N.A.G. to be in a placement out of the area with unfamiliar people with regards to the family dynamic.

While the case was pending, C.G. failed to comply with her service plan. She repeatedly stated that she was not going to comply with her service plan and that she did not need drug treatment because she is not an addict. C.G. failed to submit to requested drug testing on several occasions. The evidence also showed that C.G. intentionally used products to alter her hair and urine drug test results.

Viewing the evidence above relating to the statutory and **Holley** factors in the light most favorable to the trial court's findings, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of C.G.'s parental rights is in the best interest of the children. *See In re J.F.C.*, 96 S.W.3d at 266. Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of C.G.'s parental rights is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We overrule C.G.'s fifth and sixth issues.

In her first and second issues, C.G. argues that her trial counsel rendered ineffective assistance.

**Standard of Review**

An indigent parent is entitled to appointed counsel in a termination of parental rights case, and that statutory right "embodies the right to effective counsel." *In re B.G.*, 317 S.W.3d 250, 253–54 (Tex. 2010). Ineffective assistance claims must be firmly founded in the record, and the record must affirmatively show the alleged ineffectiveness. *In re L.C.W.*, 411 S.W.3d 116, 127 (Tex. App.–El Paso 2013, no pet.); *see also Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 622–23 (Tex. App.–Houston [1st Dist.] 2009, pet. denied). When the record is silent concerning the reasons for counsel's actions, the reviewing court will not engage in speculation to find ineffective assistance of counsel, and the appellant bears the burden of overcoming the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy. *In re L.C.W.*, 411 S.W.3d at 127.

In reviewing claims of ineffective assistance of counsel, we consider all circumstances surrounding the case and apply the Supreme Court's two-pronged test used in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *In re M.S.*, 115 S.W.3d at 545. Under *Strickland's* first prong, the parent must show that counsel's performance was deficient. *See id.* (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *In re J.O.A.*, 283 S.W.3d 336, 342 (Tex. 2009). Under the second prong, the parent must show that the deficient performance prejudiced the defense. *See In re M.S.*, 115 S.W.3d at 545. This requires a showing that counsel's errors were so serious as to deprive the parent of a fair trial, a trial whose result is reliable. *See In re J.O.A.*, 283 S.W.3d at 342. To establish prejudice, the parent must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *In re V.V.*, 349 S.W.3d 548, 559 (Tex. App.–Houston [1st Dist.] 2010, pet. denied). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In conducting our review, we "must primarily focus on whether counsel performed in a reasonably effective manner." *In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006). We give great

deference to counsel's performance, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic." *Id*. Challenged conduct constitutes ineffective assistance only when it is "so outrageous that no competent attorney would have engaged in it." *Id*. To be successful in his ineffective assistance of counsel claim, C.G. must show that counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064; *see also In re L.D.G.*, No. 12–11–00005–CV, 2012 WL 171888, at *1 (Tex. App.–Tyler Jan. 18, 2012, no pet.) (mem. op.). Failure to satisfy *Strickland's* requirements defeats an ineffectiveness challenge. *See Walker*, 312 S.W.3d at 623.

**Analysis**

In her brief, C.G. argues that her trial counsel's representation was deficient. Specifically, her first issue contends that trial counsel failed to file a written motion for continuance alleging the absence of a material witness, C.G. She alleges in her second issue that trial counsel failed to develop a record regarding the materiality of her testimony and the effect her absence would have on the presentation of the defense.

C.G. did not appear in court the morning of jury selection. Trial counsel made an oral motion for continuance, which was denied after trial counsel informed the court that C.G. had notice of the trial date. After the oral motion was denied, trial counsel requested C.G.'s absence not be mentioned during voir dire. The court agreed. C.G. was present in court that afternoon, after the jury had been selected and prior to the start of testimony. C.G. did not appear the second day of trial. She was told the previous day when to appear, and her trial counsel informed the court that he unsuccessfully attempted to reach his client. On the third day of trial, C.G.'s trial counsel informed the court that he learned car trouble was the reason for her failure to appear. Although C.G. told him that she tried to contact him multiple times, counsel had no messages from her. Trial counsel then requested a temporary continuance so that he could attempt to contact C.G., who was not present. His attempt to contact her was unsuccessful, and C.G. did not appear for the third and final day of trial.

A motion for continuance must be in writing, state specific facts supporting the motion, and be verified or supported by affidavit. TEX. R. CIV. P. 251; *In re A.A.*, No. 05-07-01698-CV, 2008 WL 2514346, at *2 (Tex. App.—Dallas June 25, 2008, no pet.) (mem. op.); *see Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). The mere absence of a party does not entitle him to a

continuance; the party must show a reasonable excuse for his absence. *Ngo v. Ngo*, 133 S.W.3d 688, 693 (Tex. App.—Corpus Christi 2003, no pet.).

C.G.'s trial counsel was honest with the court and informed it that he did not know why C.G. was not present on the first or second day of trial. Therefore, trial counsel had no personal knowledge by which he could have supported a written motion for continuance by either verification or affidavit. *See In re A.A.*, 2008 WL 2514346, at *2-3. As a result, C.G. has failed to demonstrate that trial counsel's conduct was deficient under *Strickland*. *See id.* at *3. Even assuming trial counsel's failure to file a sworn written motion for continuance meets the first prong of the *Strickland* test for ineffective assistance of counsel, we cannot conclude that the alleged error meets the second prong of the *Strickland* test. *See Strickland*, 466 U.S. at 694; *In re H .R.M.*, 209 S.W.3d at 111. C.G. has not demonstrated a reasonable probability that "but for" the alleged error, the outcome of the hearing would have been different. *See Thompson*, 9 S.W.3d at 812. The ruling on a motion for continuance is at the trial court's discretion. *See Villegas*, 711 S.W.2d at 626. As the State points out, the record shows the one-year statutory deadline for adjudication of a suit seeking termination of parental rights, pursuant to Texas Family Code Section 263.401, was looming. Thus, even if the motion for continuance had been based on personal knowledge, the record does not reveal a reasonable probability that the trial court would have granted the motion.

C.G. further argues that her testimony was material to her case and that trial counsel should have developed a record explaining her absence and the materiality of her testimony. However, C.G. has failed to demonstrate that trial counsel would have called her as a witness if she had been present. C.G. filed a motion for new trial that did not include her claims of ineffective assistance. As a result, trial counsel did not have an opportunity to explain his actions and we presume counsel made all significant decisions in the exercise of professional judgment. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Because C.G. failed to rebut the presumption that trial counsel's actions were based upon a reasonable decision, she has not satisfied the first prong of *Strickland*. *See In re H.R.M.*, 209 S.W.3d at 111.

For the above reasons, we overrule C.G.'s first and second issues.

## DISPOSITION

Having overruled C.G.'s first, second, third, fourth, fifth, and sixth issues, we *affirm* the trial court's judgment.

13

__B__RIAN __H__OYLE
Justice

Opinion delivered November 5, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 5, 2018**

**NO. 12-18-00131-CV**

**IN THE INTEREST OF F.R.G. AND N.A.G., CHILDREN**

Appeal from the County Court at Law
of Cherokee County, Texas (Tr.Ct.No. 2017-04-0235)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed** and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*